## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Khaled Abd Elgabar Mohammed Othman,                    )
    Detainee,                    )
    Guantanamo Bay Naval Station                    )
    Guantanamo Bay, Cuba;                    )
                           )
Abd Al Malik Abd Al Wahab,                    )
                           )
    as Next Friend of Khaled Abd Elgabar ;                    )
    Mohammed Othman                    )
                           )

*Petitioners/Plaintiffs*,                    )
                           )

v.                    )
                           )

GEORGE W. BUSH,                    )
    President of the United States                    )
    The White House                    )
    1600 Pennsylvania Ave., N.W.                    )
    Washington, D.C. 20500;                    )
                           )
DONALD RUMSFELD,                    )
    Secretary, United States                    )
    Department of Defense                    )
    1000 Defense Pentagon                    )
    Washington, D.C. 20301-1000;                    )
                           )
ARMY BRIG. GEN. JAY HOOD,                    )
    Commander, Joint Task Force - GTMO                    )
    JTF-GTMO                    )
    APO AE 09360; and                    )
                           )
ARMY COL. MIKE BUMGARNER,                    )
    Commander, Joint Detention                    )
       Operations Group - JTF-GTMO,                    )
    JTF-GTMO                    )
    APO AE 09360,                    )
                           )
*Respondents/Defendants*.                    )

**PETITION FOR WRIT
OF HABEAS CORPUS**

CASE NUMBER  1:05CV02088

JUDGE: Richard W. Roberts

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 10/25/2005

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Khaled Abd Elgabar Mohammed Othman (hereinafter "Othman") seeks the Great Writ. A citizen of Yemen, he acts on his own behalf and through his Next Friend, Abd Al Malik Abd Al Wahab, his acquaintance. He is a civilian who, upon information and belief, has been wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantanamo Bay, Cuba ("Guantanamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention. Petitioner is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner or to establish in this Court a lawful basis for his detention.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantanamo.

## I.
## JURISDICTION

1.    Petitioner brings this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus, and to entertain the Petition filed by Abd Al Malik Abd Al Wahab, the Next Friend of Petitioner Othman, under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.    Petitioner Othman is a Yemeni citizen who is presently incarcerated at Guantanamo and held in Respondents' unlawful custody and control.

4.    Petitioner Al Wahab is Othman's companion.    He is a Yemeni citizen.    Because Petitioner Othman has been denied access to legal counsel and to the courts of the United States, Al Wahab acts as his Next Friend.

5.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner Othman is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner Othman's unlawful detention and is sued in his official capacity.

6.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Othman. He is sued in his official capacity.

3

7.     Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantanamo Bay.  He has supervisory responsibility for Petitioner Othman and is sued in his official capacity.

8.     Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo.  All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

9.     Upon information and belief, Petitioner Othman is not, nor has he ever been, an enemy alien, lawful or unlawful, belligerent or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

10.    Petitioner Othman seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' determination that he is either an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

11.    Petitioner remains incarcerated at the U.S. Naval base at Guantanamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

12.    Upon information and belief, Petitioner Othman has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due

process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

13.    Upon information and belief, Petitioner Othman desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### The Joint Resolution

14.    In the wake of the September 11, 2001, attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

15.    Upon information and belief, Petitioner Othman did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

### The Executive Order

16.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

    i.      is or was a member of the organization known as al Qaeda;
    ii.     has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
    iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

5

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination in writing. The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

17.   The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

18.   The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Othman was made by Respondents in the United States and in this judicial district, the decision to detain Othman at Guantanamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Othman, was, and is, being made by Respondents in the United States and in this judicial district.

6

19.  President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Othman is subject to the Executive Order.

20.  Petitioner Othman is not properly subject to the Executive Order.

21.  Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Petitioner was not arrested or detained by the United States in the course of an armed conflict. Petitioner Othman is not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantanamo Bay Naval Station

22.  On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantanamo Bay, Cuba. In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison facility at Guantanamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

23.  Prisoners incarcerated at Guantanamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 542 U.S. __, 124 S.Ct. 2686, 2698 (June 28, 2004).

24.  By at least 2004, [the precise date being unknown to counsel, but known to Respondents,] the United States military transferred Petitioner Othman to Guantanamo, where he has been held ever since, in the custody and control of Respondents.

### The Conditions of Detention at Guantanamo

25.  Since gaining control of Petitioner Othman, the United States military has held him virtually *incommunicado*.

26.  Upon information and belief, Petitioner Othman has been forced to provide involuntary statements to Respondents' agents at Guantanamo and has been or will be interrogated

repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges.

27.    Upon information and belief, Petitioner Othman has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel; and he has not been adequately informed of his rights under the United States Constitution, the Regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or Customary International Law.   Indeed, Respondents have taken the position that Petitioner Othman should not be informed of these rights.   As a result, Petitioner Othman lacks any ability to protect or to vindicate his rights under domestic and international law.

28.    Upon information and belief, Petitioner Othman has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.*, United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of Guantanamo Bay Detainees," Feb. 4, 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantanamo Bay," Nov. 30, 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," July 26, 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'*, at 22 (Oct. 27, 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck,

*Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5. Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantanamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003).[1]

29.    In a confidential report to the United States government, the ICRC charged the U.S. military with intentional use during interrogations of psychological and physical coercion on prisoners at Guantanamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantanamo," *New York Times*, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical workers at Guantanamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, Jan. 6, 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantanamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, Nov. 4, 2004.

temperature extremes, dogs, prolonged isolation, and loud music. *See Guantanamo: An Icon of Lawlessness,* Amnesty International, Jan. 6, 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantanamo," *New York Times*, Jan. 1, 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantanamo Prison Cited in FBI Memos," *Washington Post*, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantanamo Bay," *Washington Post*, Dec. 21, 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantanamo," *New York Times*, Dec. 7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantanamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, Jan. 27, 2005.

30.     The unlawful and unconstitutional interrogation techniques used by Respondents at Guantanamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantanamo Detainees," *Seattle Post-Intelligencer*, Jan. 19, 2005.

31.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, "Gonzales

Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, Jan. 18, 2005, at A4.

32. Counsel for Respondents maintain that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.*, Roland Watson, *The Times* (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .'"); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, February 13, 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

33. According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Aug. 12, 2005).

### Rendition

34.　During interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

35.　The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to new accounts,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries, . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt ..., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

36.     The United States currently is in negotiations with Yemen, Petitioner Othman's country

        of origin, to render a number of Yemeni detainees in the near future. *See* "U.S. Holding

        Talks on Return of Detainees," *Wash. Post*, Aug. 9, 2005, at A13.

37.     This Court has granted a temporary injunction against the proposed rendition of 13 other

        Yemeni detainees on the ground that they face a risk of immediate irreparable harm if

        rendition to Yemen is permitted. *Abdah v. Bush*, No. Civ. A. 041254 (HHK)(RMC)

        (D.D.C. March 12, 2005).

38.     Upon information and belief, Petitioner Othman is at risk of being rendered, expelled or

        returned without lawful procedures to a country that engages in torture during

        interrogations and incarceration.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

39.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

40.     By the actions described above, Respondents, acting under color of law, have violated

        and continue to violate common law principles of due process as well the Due Process

        Clause of the Fifth Amendment to the Constitution of the United States.  President Bush

        has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due

        process of law, and the remaining Respondents have implemented those orders.

        Respondents' actions deny Petitioner Othman the process accorded to persons seized and

        detained by the United States military in times of armed conflict as established by, *inter*

        *alia*, the Uniform Code of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of

        the Third and Fourth Geneva Conventions, and customary international law as reflected,

expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

41.    To the extent that Petitioner Othman's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

42.    Accordingly, Petitioner Othman is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF<br>(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

43.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

44.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Othman to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

45.    Accordingly, Petitioner Othman is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

THIRD CLAIM FOR RELIEF<br>(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

46.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

47.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Othman the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

48.    Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

49.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

50.    Accordingly, Petitioner Othman is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

51.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

52.    By the actions described above, Respondents have denied and continue to deny Petitioner Othman the due process accorded to persons seized and detained by the United States military in times of armed conflict as established by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

53.    Accordingly, Petitioner Othman is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
### (ARTICLE II OF THE UNITED STATES CONSTITUTION- UNLAWFUL DETENTION)

54.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

55.    Upon information and belief, Petitioner Othman is not, nor has he ever been, an enemy alien, lawful or unlawful, belligerent or combatant of any kind.  The Executive lacks the

authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

56.   By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Othman and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantanamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Othman.

57.   The military seizure and detention of Petitioner Othman by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

58.   To the extent that Respondents assert that their authority to detain Petitioner Othman derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

59.   Accordingly, Petitioner Othman is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SIXTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL
DETENTION)

60. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

61. Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

62. By arbitrarily and capriciously detaining Petitioner Othman in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

63. Accordingly, Petitioner Othman is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA –
ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

64. Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65. By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Othman the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

66.    Accordingly, Petitioner Othman is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

EIGHTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

67.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

68.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Othman's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Othman's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

69.    Accordingly, Petitioner Othman is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

NINTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

70.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.    Upon information and belief, Petitioner Othman is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

72.    Accordingly, Petitioner Othman is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

73.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* Apr. 22, 1954.

## V.
## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays for relief as follows:

1.    Designate Abd Al Malik Abd Al Wahab as Next Friend of Petitioner Khaled Abd Elgabar Mohammed Othman;

2.    Grant the Writ of Habeas Corpus and order Respondent to release Petitioner Othman from his current unlawful detention;

3.    Order that Petitioner Othman be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.    Order that Petitioner Othman cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

5.    Order that Petitioner Othman cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture;

19

6.   Order Respondents to allow counsel to meet and confer with Petitioner Othman, in private and unmonitored attorney-client conversations;

7.   Order Respondents to cease all interrogations of Petitioner Othman, direct or indirect, while this litigation is pending;

8.   Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Othman;

9.   Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

10.  Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner Othman without due process is arbitrary, unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

11.  Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and international law.

Dated:   October 24, 2005                    Respectfully submitted,

                                             Counsel for Petitioners:

                                             _____
                                             Jane F. Barrett (DC Bar #261529)

                                             _____
                                             Shawn M. Wright (DC Bar #458377)

                                             BLANK ROME, LLP
                                             600 New Hampshire Avenue, NW
                                             Washington, DC  20037
                                             (202) 772-5800

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.

Dated:        October 24, 2005

Jane F. Barrett (DC Bar #261529)

Shawn M. Wright  (DC Bar #458377)

BLANK ROME, LLP
600 New Hampshire Avenue, NW
Washington, DC  20037
(202) 772-5800

22